Fecteau, J.
This is a claim on a payment bond issued to a general contractor on a public construction project pursuant to G.L.c. 149, Sec. 29. The plaintiff, a material supplier to a subcontractor, delivered structural fill and is owed $21,671. The defendants R.A.C. Builders, Inc., the general contractor, and Fidelity, the surety, while agreeing that the plaintiff has not been paid the amount in question, contend that the plaintiff did not comply with the “written notice” requirement of the statute, thus absolving them of financial liability-
The case came on for trial before me sitting without jury, the parties having waived their claim for jury trial, on February 2, 1999. Upon consideration of the evidence and the arguments of the parties, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. The defendant, R.A.C. Builders, Inc., (herein “RAC”) was the successful bidder on a construction project to build public housing in Auburn, Massachusetts. This project began approximately November 1993. A payment bond was required by the owner and was provided to RAC by the defendant Fidelity & Deposit Company of Maryland.
2. O’Brien Excavating & Trucking, Inc., was a subcontractor on the project and was retained for site work. They arranged with the plaintiff Baldarelli Bros., Inc., for the delivery of structural quality fill after encountering problems with their first supplier. Baldarelli began delivery in March 1994.
3. It was Baldarelli’s practice to submit invoices to O’Brien on a weekly basis, so long as at least one delivery was made to the job site during the week. O’Brien submitted invoices to RAC on a monthly basis, as did RAC to the owner. In the beginning of the relationship, satisfactory payment on Baldarelli’s invoices were made by O’Brien.
4. By May 1994, O’Brien’s payment record had become sporadic and unsatisfactory to Baldarelli. Discussions were held and Baldarelli agreed to continue deliveries so long as payments were made. They received a couple of payments thereafter, but by July 1994, O’Brien owed them $30,671. Baldarelli stated that unless the delinquent account was remedied, they would stop delivery.
5. The account remained in delinquency. Baldarelli stopped delivery on July 26, 1994.
6. Although Baldarelli had brought the delinquency to the attention of RAC at least by May 1994, it (RAC) did not become directly involved in the situation until August 1994, when it had become apparent to them that O’Brien’s earlier difficulty with its first supplier had had a ripple effect on its ability to keep current with many of its current suppliers, Baldarelli being one. RAC was interested in keeping the project in progress and inquired of O’Brien of its status with its suppliers. RAC had also learned by this time that Baldarelli had stopped making deliveries. On behalf of RAC, Gino DeCesare made oral inquiry of Richard Baldarelli as to the reasons for the stoppage in deliveries; he confirmed the amount it was owed by O’Brien. DeCesare, the job superintendent for RAC, told Baldarelli that he would have to discuss the matter with his superior, Roland Ciocca, the president of RAC.
7. On or about August 4, 1994, Ciocca called Baldarelli and spoke with Richard Baldarelli. He asked if and under what circumstances Baldarelli would resume shipments to the job site if RAC was its customer instead of O’Brien. Baldarelli confirmed that they would resume delivery of fill so long as RAC submitted purchase orders to Baldarelli. This was agreed. Also discussed at the same time was the delinquency of O’Brien. Baldarelli informed Ciocca that he was aware of the payment bond and the formalities that would have to be followed to make such a claim. Ciocca encouraged him to allow Ciocca to work out a payment plan so RAC could begin paying Baldarelli directly out of funds due O’Brien. Ciocca requested a copy of the outstanding invoice between Baldarelli and O’Brien. To the extent that Mr. Ciocca testified that he did not request a written invoice from Baldarelli nor that he discouraged him from filing a claim on the payment bond, he is disbelieved.
8. On the following day, Baldarelli hand-delivered a copy of their outstanding invoice with O’Brien to DeCesare at the RAC construction trailer on the job site.
9. On August 17, 1994, Ciocca and DeCesare met with Victor “Rob” O’Brien, project manager for O’Brien Excavating, at the job site. The purpose was to develop a plan whereby O’Brien’s suppliers could be paid some or all of their outstanding balances and to keep the project moving while at the same time allowing some protection for RAC on the claim being made by O’Brien’s first gravel supplier for which Baldarelli had been substituted. O’Brien agreed to allow RAC to issue checks directly to O’Brien suppliers from funds allocated to O’Brien.
10. On August 29, 1994, RAC issued a check to Baldarelli for $5000.00 on the O’Brien delinquency. A second check was issued on October 13, 1994, in the amount of $4000.00. RAC started calling for gravel deliveries from Baldarelli under the new plan in September 1994, and paid Baldarelli’s invoices for these direct purchases on a timely basis. RAC made no further payments to Baldarelli on the O’Brien delinquency, nor did Baldarelli receive any further payments from O’Brien. O’Brien Excavating abandoned the job due to financial reasons shortly thereafter.
*588 11. Baldarelli is owed nothing on the direct account with RAC but is currently owed $21,671.20, on the O’Brien delinquency. A formal notice of claim on the payment bond was made by Baldarelli, through counsel, on January 11, 1995.
RULINGS OF LAW
The defendants RAC and Fidelity contend that they are not liable under G.L.c. 149, Sec. 29, due to the fact that the plaintiff failed to comply with the notice provision of this statute in two distinct respects: first, that the submission of the invoice of August 4, 1994 does not constitute sufficient “written notice,” and, second, that the formal notice of claim dated January 11, 1995, although in sufficient form, is untimely.
G.L.c. 149, Sec. 29, states in relevant part:
. . . Any claimant having a contractual relationship with a subcontractor performing labor or both performing labor and furnishing materials pursuant to a contract with the general contractor but no contractual relationship with the contractor principal furnishing the bond shall have the right to enforce any such claim as provided in subparagraphs (a) and (b) of paragraph (2) only if such claimant gives written notice to the contractor principal within sixty-five days after the day on which the claimant last. . . furnished the . . . materials, . . . included in the paragraphs (1) coverage, stating with substantial accuracy the amount claimed, the name of the party for whom such . . . materials were furnished: . . . The notices provided for in this paragraph (3) shall be served by mailing the same by registered or certified mail postage prepaid in an envelope addressed to the contractor principal at any place at which the contractor principal maintains an office or conducts his business, or at the contractor principal’s residence, or in any manner in which civil process may be served. . . .
The last delivery made to the job site by Baldarelli on account of its relationship with O’Brien was July 26, 1994. Therefore, if the notice given by the invoice dated August 4, 1994 is not in proper form, the notice of claim dated Januaiy 11, 1995 is untimely as it is beyond sixty-five days from July 26, 1994.
The defendants contend that the invoice dated August 4th is not in a proper form to be considered as a claim upon a payment bond. They point to the plaintiffs Januaiy 11, 1995, claim letter as evidence of how it should be presented and to show that the plaintiff knew how it should be done. The statute does not require that the notice contain any specific information other than the amount claimed and the identity of delinquent party. The invoice of August 4, 1994, although not specifically identifying itself as a notice of claim on the payment bond, does provide a substantially accurate statement of the delinquent account and the name of the delinquent subcontractor and is a sufficient “written notice” under the statute. See Bastianelli v. National Union Fire Insurance Co., 36 Mass.App.Ct. 367, 369 (1994).
The fact that it was not mailed by registered or certified mail is likewise not fatal to the claim. “Statutory prescription of registered mail or certified mail notice is to facilitate proof of delivery of notice. If actual timely notice is proved . . . , failure to comply with a registered or certified mail requirement is not a fatal deviation from statutory procedures.” Cinder Products Corporation v. Schena Construction Co., Inc., 22 Mass.App.Ct. 927, 929 (1986), quoting from Sevigny v. Dowd, 343 Mass. 160, 161-62 (1961), and others.
Richard Baldarelli stated, credibly, that he hand-delivered the statement of account to RAC’s job superintendent, Gino DeCesare. This is proof of actual and timely notice. Moreover, Ciocca began to act as early as August 17, 1994, to facilitate payment in some amount to Baldarelli. This is likewise evidence of actual notice and knowledge. Even if it were not, RAC should not be permitted to take advantage of Baldarelli’s acceptance of Ciocca’s request to Baldarelli to allow him an opportunity to work out a payment plan with O’Brien to the disadvantage of Baldarelli’s claim on the bond. For the foregoing reasons, the plaintiff is entitled to judgment in its favor.
ORDER FOR JUDGMENT
It is hereby ordered that a preliminary judgment be entered in favor of the plaintiff for $21,671.20 against the defendants R.A.C. Builders, Inc. and Fidelity & Deposit Company of Maryland. In light of the fact that the operative statute allows for the award of attorneys fees, the parties are invited to submit to further proceedings in order to include such in a final judgment.